THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
WESLEY L. HSU (CA SBN 188015)
Assistant United States Attorney
Deputy Chief, Cyber and
Intellectual Property Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3045
     Facsimile: (213) 894-8601
     email:     wesley.hsu@usdoj.gov

Attorney for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 06-498-DSF |
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM |
| v. | |
| ALEXANDER GLUZMAN, | |
| Defendant. | Hon. Dale S. Fischer |

**I.  INTRODUCTION**

The government respectfully opposes defendant Alexander Gluzman's ("defendant") arguments for a sentence outside of the Guidelines range recommended by the government:  24-30 months. The arguments submitted by defendant in his sentencing memorandum do not support a sentence outside of that range.  Moreover, although defendant requests an evidentiary hearing to resolve disputed factual matters, defendant offers no evidence whatsoever to create a factual dispute in this case.  The government therefore requests that the Court impose upon defendant a low-end, Guidelines sentence of 24 months imprisonment, a three-year period of supervised release, restitution in the amount of $32,000 (as set forth in the PSR), and a special assessment of $200.

**II.  THE PARTIES RESPECTFULLY REQUEST THAT THE COURT EMPLOY THE GUIDELINES CALCULATION SET FORTH IN THE PLEA AGREEMENT**

Defendant first argues that the Court should adopt the Guidelines calculation submitted by the parties in the plea agreement rather than the one calculated by the PSR.  The government concurs in this request.

**III. THE INFRINGEMENT AMOUNT AGREED TO IN THE PLEA AGREEMENT DOES NOT OVERSTATE THE "AMOUNT OF LOSS" OR "SERIOUSNESS OF THE OFFENSE"**

Defendant argues that the "loss" to which the parties stipulated in the plea agreement "substantially overstates the seriousness of the offense" so as to warrant a downward departure. (Def.'s Sent. Pos. at 7-8). As with all downward departure requests under the Guidelines, defendant carries the

2

burden of establishing by a preponderance of the evidence that any Guidelines departure is warranted. United States v. Lipman, 133 F.3d 726, 730 (9th Cir. 1998). Here, although the Court may downward depart where the loss guideline "substantially overstates the seriousness of the offense," USSG § 2B1.1 comment n.18(C) (emphasis added), the government submits that defendant has failed to carry his burden that his case falls "outside of the heartland." Indeed, he falls squarely within the conduct that USSG § 2B5.3 was designed to punish.

As an initial matter, because defendant engaged in an intellectual property offense, loss to the victim is not the measure by which the Sentencing Guidelines are calculated; rather, the offense level is calculated based upon "infringement amount," see USSG § 2B5.3(b)(1), in this case the retail value of defendant's illegal access devices and the stolen trade secret technology. Thus, defendant's arguments about what loss was caused by his conduct and his lack of restitution obligation are irrelevant to his Sentencing Guidelines calculation.

In any event, the infringement amount in this case does not substantially overstate the seriousness of his offense. As defendant admitted in his guilty plea colloquy, defendant stole "enormously valuable technology" from DirecTV in this case, a technology in which DirecTV had invested in excess of $18 million. (Plea agt. at 5). He abused the access that he had as a contractor to steal 160 megabytes of proprietary and confidential DirecTV computer code relating to the devices used to encrypt DirecTV's intellectual property. (Id. at 5-6). Defendant admitted his conduct caused $49,321.50 in loss to

DirecTV.  (Id. at 6).  The PSR calculates the out-of-pocket loss to DirecTV as $32,000, but with a labor loss of $177,812.50. (PSR ¶ 31).  Furthermore, defendant distributed and sold illegal access devices to Dish Networks, allowing customers to steal Dish Network programming, causing "a total loss to Dish Networks of $229,995."  (Id. at 6-7).[1]  The stipulated infringement amount of greater than $200,000 accurately represents the seriousness of defendant's offense.  The government therefore respectfully requests that the Court employ this infringement amount when sentencing defendant.  No downward departure is warranted here.

**IV.  SENTENCING DEFENDANT PURSUANT TO THE GUIDELINES AVOIDS UNWARRANTED SENTENCING DISPARITIES**

Defendant next argues for a non-custodial sentence outside of the Guidelines range based upon comparisons to other satellite signal theft cases.  Defendant has utterly failed to demonstrate how a Guidelines range sentence of 24 months creates an <u>unwarranted</u> sentencing disparity with the other signal theft cases cited by the government.

Arguably, defendant's offense is far more serious than the other cases of satellite signal theft.  In most of those cases, save Whitehead, the defendants actually reverse engineered the access devices, or used available technology, to allow their customers to steal satellite signal.  In this case, defendant abused his access as a contractor to steal DirecTV's 18 million

---

[1] Although defendant may argue that Dish Networks did not actually suffer this loss, even the loss Guidelines under USSG § 2B1.1 is governed by <u>intended</u> loss rather than actual loss suffered.  Given the devices seized from defendant's home and his practice of providing the access devices to others, there can be no serious dispute that defendant is responsible for an intended loss to Dish Networks of greater than $200,000.

4

dollar technology from the source. He admitted to causing $49,321.50 in actual damages to DirecTV. (Plea agt. at 6). In addition to his theft of trade secrets, defendant also sold illegal access devices like the other defendants against whom defendant has compared himself. A 24 month sentence in this case therefore does not create any unwarranted sentencing disparity.

Defendant has also failed to show that the defendants in those other cases are similarly situated to him. Although he cites some facts in each case, he does not give the Court a full picture of the facts in those cases, and any unwarranted sentencing disparity is necessarily based on a close factual comparison. In general, the government respectfully submits that imposing a Guidelines range sentence avoids unwarranted sentencing disparities because the Guidelines themselves account for the factual differences between the defendants.

The government also draws the Court's attention to United States v. Ramirez, CR 06-475-ABC, in which the Court imposed a 24 month sentence in a case involving satellite signal theft. Although it is true that Ramirez had a criminal history greater than defendant's, Ramirez was not convicted of stealing a trade secret. Although probation with conditions was recently imposed in two additional satellite signal theft cases, United States v. Sarnoski, CR 06-744-DDP, and United States v. Kosierowski, CR 07-233-DDP, those cases are again distinguishable in that the crimes there did not involve stealing the 18 million dollar trade secret from DirecTV.

Therefore, the government's recommended low-end sentence of 24 months is warranted and would not create unwarranted

5

sentencing disparity.  Indeed, the government respectfully submits that it is variation from the Guidelines that would have the secondary effect of creating unwarranted sentencing disparity.

## V. DEFENDANT'S MEDICAL AILMENTS DO NOT WARRANT A DOWNWARD DEPARTURE

Defendant has also failed to demonstrate that defendant's current medical condition warrants a downward departure.  While not minimizing defendant's spinal meningitis and medical ailments, they simply do not rise to the level of the seriousness which Courts have found to warrant a downward departure. Defendant is 35, approximately half the age of the defendants in most of the cases cited in defendant's brief.  (Def.'s Sent. Pos. At 11-12).  He does not have a terminal condition, such as advanced HIV, nor does have the type of brain damage where a departure on this ground was granted.  (See id.).  In fact, his last serious medical episode appears to be 2004, so his current medical condition seems relatively good.

Rather that presenting a serious and current medical condition, defendant relies primarily on the general proposition that "[m]eningitis can cause long-term problems" and his unsupported assertions that "[n]ot all of [defendant's] medications are available in prison and can cause deterioration in Defendant's health" and that "[t]he usual Common Fare Diet available in BOP facilities is not sufficient for heart patients."  (Id. at 12-13 (emphasis added)).  None of this establishes that he suffers from a current medical problem so far outside the heartland that he should escape prison for his crimes

or that the Bureau of Prisons ("BOP") is in fact unable to accommodate defendant. The fact of the matter is, as the Court is no doubt aware, the BOP does have medical staff at their facilities and is associated with hospitals in the case of emergency. Moreover, defendant has not established that fact that the BOP could not make adjustments to accommodate defendant even if it were true that the general, or "Common Fare," BOP diet and conditions might create medical problems for defendant.

For the foregoing reasons, defendant has not carried his burden to demonstrate either that he has a serious medical condition warranting a downward departure or that the BOP is not capable of accommodating his condition. No departure is warranted.

**VI. RESTITUTION**

After relying on the limited restitution at issue here when arguing that the stipulated infringement amount substantially overstates the loss, defendant then argues that incarcerating him might jeopardize repayment of that restitution. Defendant's restitution amount is only $32,000, and he earned $53,000 in a six month period last year (PSR ¶ 106). It is extremely unlikely that incarceration will hamper defendant's ability to repay over the course of his three years of supervised release. Moreover, restitution is only one of the 3553(a) factors, and the government respectfully submits that the other factors in this case, including the advisory Guidelines, the seriousness of the offense, and the need to promote respect for the law, outweigh the need for his limited restitution to DirecTV.

**VII. CONCLUSION**

For all the foregoing reasons, defendant's departure arguments should be rejected. The factors set forth in 18 U.S.C. § 3553(a) support the imposition of sentence of 24 months incarceration (a sentence at the low-end of the applicable Guidelines range), a three-year period of supervised release, restitution in the amount of $32,000, and a special assessment of $200.

DATED: October 29, 2007    Respectfully submitted,

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

                     /s/
WESLEY L. HSU
Assistant United States Attorney
Deputy Chief, Cyber and
Intellectual Property Crimes

Attorneys for Plaintiff
United States of America

<u>CERTIFICATE OF SERVICE</u>

I, **SUSAN M. CRUZ**, declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of: **GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM**

**service was:**

[ ] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[XX] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[ ] By hand delivery addressed as follows:

[ ] By facsimile as follows:

[ ] By messenger as follows:

[ ] By federal express as follows:

**DANIEL A. GIBALEVICH, ESQ.
GIBALEVICH & ASSOCIATES
2029 CENTURY PARK EAST, SUITE 1115
LOS ANGELES, CALIFORNIA 90067-2912
OFFICE: (310) 551-0600
FAX: (310) 551-0601**

This Certificate is executed on **October 29, 2007**, at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

_____
SUSAN M. CRUZ